IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEMANTIC COMPACTION SYSTEMS, INC., AND PRENTKE ROMICH COMPANY, an Ohio Corporation, | : : : : |
| Plaintiffs, | : : |
| v. | : Civ. No. 2:12 – CV – 248 – GLL : |
| SPEAK FOR YOURSELF LLC; RENEE COLLENDER, an individual; and HEIDI LOSTRACCO, an individual, | : JURY TRIAL DEMANDED : : : |
| Defendants. | : : |

DEFENDANTS' ANSWER AND COUNTERCLAIMS
TO PLAINTIFFS' AMENDED COMPLAINT

Speak for Yourself LLC, Ms. Renee Collender, and Ms. Heidi LoStracco (collectively, "Defendants") respond to the Amended Complaint filed by Plaintiffs and set forth their amended answer, affirmative defenses, and counterclaims (Fifth-Seventh Counterclaims for Relief).

PRELIMINARY STATEMENT

Speak for Yourself ("SFY") is an iPad application designed by two ASHA certified speech-language pathologists who work exclusively with functionally nonverbal clients. SFY allows nonverbal children to develop repetitive two step moves to form up to 14,000 words. This is how SFY works. A child starts at a home screen with 119 symbols that represent core vocabulary categories (color, friend, eat, drink, etc.). Touching a symbol on the home page will take her to a second page with other symbols. For example, if she touches "color" on the home page, she will go to the color page and can touch any of the colors on that page. In two moves (color + green), the child can "say" green; then SFY automatically returns

the child to the home page.  SFY relies on the stable location of symbols and a stable pattern for saying each word so that the child can develop consistent motor plans, much like verbal communicators use muscles the same way when they say the word green or people using sign language make the same motions with their hands every time they say the word green.

Significantly, Plaintiffs' patents do not describe an iPad application.  In fact, Plaintiffs' programs can only be used on a PRC device.  Further, by definition, SFY does not use the multiple meaning (or polysemous) icons described in Plaintiffs' patents.  LoStracco and Collender found that Plaintiffs' devices created confusion because Plaintiffs' icons were assigned many meanings, there are multiple ways to say the same word, and the sequences often required too many moves.  SFY provides an effective tool with faster access to consistent motor planning precisely because it does not use polysemous icons.

<u>ANSWER</u>

INTRODUCTION

1.      Defendants deny the averments of paragraph 1.

2.      Defendants deny the averments of paragraph 2.

3.      The averments of paragraph 3 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 3.

4.      Defendants deny the averments of paragraph 4.

a.      The averments of paragraph 4(a) set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 4(a).

b.      Defendants deny the averments of paragraph 4(b).

c.      Defendants deny the averments of paragraph 4(c).

       d.     The averments of paragraph 4(d) set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 4(d).

5.     The averments of paragraph 5 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 5.

6.      The averments of paragraph 6 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 6.

THE PARTIES

7.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 7, and on that basis deny them.

8.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 8, and on that basis deny them.

9.     Speak for Yourself LLC is a limited liability company duly existing and organized under the laws of the State of New Jersey with its principal place of business at 37 Heron Pointe Court, Marlton, New Jersey 08053.

10.     Ms. Collender is an individual and member of Speak for Yourself with a business address of 37 Heron Pointe Court, Marlton, New Jersey 08053.  Ms. Collender denies the remaining averments of paragraph 10 including, without limitation, footnote 1.

11.     Ms. LoStracco is an individual and member of Speak for Yourself with a business address of 37 Heron Point Court, Marlton, New Jersey 08053.  Ms. LoStracco denies the remaining averments of paragraph 11 including, without limitation, footnote 1.

JURISDICTION AND VENUE

12.     The averments set forth conclusions of law to which no response is required.

13.     The averments set forth conclusions of law to which no response is required.

FACTUAL AVERMENTS

14.     Defendants admit that Plaintiffs purport to bring an action under 35 U.S.C. §§ 281 *et seq.*, 17 U.S.C. §§ 101 *et seq.*, and 15 U.S.C. §§ 1125(a)(1)(A).   Defendants deny the remaining averments of paragraph 14.   Defendants specifically deny that Plaintiffs ever sought injunctive relief and deny that there is any basis upon which such relief could be allowed for Plaintiffs.

15.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 15, and on that basis deny them.

16.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 16, and on that basis deny them.

17.     "Semantic Compaction Systems" is identified as the "Assignee" on the face of U.S. Patent No. 5,748,177 ("the '177 Patent"), and the '177 Patent is attached as Exhibit "A."   Defendants deny the remaining averments of paragraph 17 including, without limitation, the alleged issue date identified by Plaintiffs.   The '177 Patent did not issue on June 7, 1995.

18.     The '177 Patent is identified on the face of U.S. Patent No. 5,920,303 ("the '303 Patent") as a "[62] Division of application No. 08/487,661, Jun. 7, 1995, Pat. No. 5,748,177," and "Semantic Compaction Systems" is identified as the "Assignee" on the face of the '303 Patent, and that the '303 Patent is attached as Exhibit "B."   Defendants deny remaining averments of paragraph 18.

19.     The block quote in paragraph 19 appears to be a partial recitation from the "Abstract" of the '177 Patent and '303 Patent. Defendants deny the remaining averments of paragraph 19.

-4-

20.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 20, and on that basis deny them.

21.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 21, and on that basis deny them.

22.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 22, and on that basis deny them.

23.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 23, and on that basis deny them.

24.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 24.

25.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 25.

26.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 26, and on that basis deny them.

27.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 27.

28.     The averments set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 28.

29.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments of paragraph 29, and on that basis deny them.

30.     Defendants' "Speak for Yourself" application is distributed through iTunes® and may be used on iPad® products.  Defendants lack sufficient knowledge or

information to form a belief as to the truth of the remaining averments of paragraph 30, and on that basis deny them.

      31.     Admitted.

      32.     Defendants admit that Exhibit "E" is a letter dated January 13, 2012, that appears to have been sent from Ms. Margo Broehl, Esq. of the Broehl Law Office by electronic mail to Mr. Douglas J. Ryder of Ryder, Lu, Mazzeo & Konieczny LLC.  Defendants deny the remaining averments of paragraph 32.

      33.     The averments of paragraph 33 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 33.

      34.     The averments of paragraph 34 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 34.

      35.     The averments of paragraph 35 set forth conclusions of law to which no response is required.  Defendants admit that they sold some SFY Apps, and deny the remaining averments of paragraph 35.

      36.     Denied as stated.  Content regarding SFY application may be found on www.speakforyourself.org.  There is a link to iTunes® (specifically, the "iTunes Preview" page) on the "Home Page."  There are three questions and answers located in "Frequently Asked Questions."  There are links to three third party web sites in "Reviews."  Defendants deny the remaining averments of paragraph 36.

      37.     The averments of paragraph 37 set forth conclusions of law to which no response is required.  Defendants admit that some clients downloaded the SFY App prior to June 4, 2012, and admit that Apple removed the SFY App from the App Store on June 4, 2012 in response to threats from Plaintiffs.  Defendants deny the remaining averments of paragraph 37.

38.     The averments of paragraph 38 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraph 38.

39.     Admitted.

40.     Speak for Yourself has posted video content on YouTube.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining averments of paragraph 40 as stated, and on that basis deny them.

41.     "Features of *Speak for Yourself*" are found on the SFY web page in "About the App."  The remaining averments of paragraph 41 are denied as stated.

42.     Speak for Yourself has a Facebook page.  Facebook pages contain links, wall posts, and audio visual content.  The remaining averments of paragraph 42 are denied as stated.

43.     Speak for Yourself has a Facebook page.  On the "About" page, Speak for Yourself includes information such as Mission, Company Overview, Description, and General Information.  Paragraph 43 appears to be a sentence taken from the Description provided on the "About" page on the Speak for Yourself Facebook page.  The remaining averments of paragraph 43 are denied as stated.

44.     Speak for Yourself has a Twitter account.  Twitter accounts contain messages posted by multiple parties.  The remaining averments of paragraph 44 are denied as stated.

45.     The averments of paragraph 45 set forth conclusions of law to which no response is required.

46.     The averments of paragraph 46 set forth conclusions of law to which no response is required.

## COUNT I

### CONTRIBUTORY PATENT INFRINGEMENT

47.     Defendants incorporate by reference the averments in all preceding and succeeding paragraphs as though set forth fully herein.

48.–55.  The averments of paragraphs 48-55 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraphs 48-55.

## COUNT II

### INDUCED PATENT INFRINGEMENT

56.     Defendants incorporate by reference the averments of all preceding and succeeding paragraphs as though set forth fully herein.

57.-62.  The averments of paragraphs 57-62 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraphs 57-62.

## COUNT III

### DIRECT PATENT INFRINGEMENT

63.     Defendants incorporate by reference the averments of the preceding and succeeding paragraphs as though set forth fully herein.

64.-68.  The averments of paragraphs 64-68 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraphs 64-68.

## COUNT IV

### DIRECT COPYRIGHT INFRINGEMENT

69.     Defendants incorporate by reference the averments of the preceding and succeeding paragraphs as though set forth fully herein.

69.-73.  The averments of paragraphs 70-73 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraphs 70-73.

COUNT V

DIRECT COPYRIGHT INFRINGEMENT

74.     Defendants incorporate by reference the averments of the preceding and succeeding paragraphs as though set forth fully herein.

75.-77.  The averments of paragraphs 75-77 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraphs 75-77.

COUNT VI

UNFAIR COMPETITION, FALSE ENDORSEMENT,

AND FALSE DESIGNATION OF ORIGIN

78.     Defendants incorporate by reference the averments of the preceding and succeeding paragraphs as though set forth fully herein.

79.-85.  The averments of paragraphs 79-85 set forth conclusions of law to which no response is required.  Defendants deny the remaining averments of paragraphs 79-85.

WHEREFORE, Defendants incorporate by reference the averments of all preceding and succeeding paragraphs as though set forth fully herein, and deny that Plaintiffs are entitled to any relief or judgment against them, individually or collectively, and specifically deny that Plaintiffs or any of them have suffered any irreparable harm that could support injunctive relief.

AFFIRMATIVE DEFENSES

Further answering the Amended Complaint and as additional defenses hereto, Defendants assert the following Affirmative Defenses, without assuming the burden of proof when such burden would otherwise be on Plaintiffs.

<u>First Affirmative Defense (Failure to State a Claim)</u>

The Complaint fails to state a cause of action against Defendants, individually or collectively, upon which relief can be granted.

<u>Second Affirmative Defense (Noninfringement)</u>

Defendants do not, and have not, infringed any valid and enforceable claim of the '177 Patent and/or the '303 Patent, directly or indirectly, literally or under the doctrine of equivalents.

<u>Third Affirmative Defense  (Invalidity)</u>

The claims of the '177 Patent and/or the '303 Patent as properly construed are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§101 *et seq.*, including, without limitation, the conditions of patentability set forth in §§101, 102, 103, and/or 112.

<u>Fourth Affirmative Defense  (Privileged Conduct)</u>

Upon information and belief, Plaintiffs claims are barred, in whole or in part, because any or all of Defendants' conduct, individually or collectively, has been lawful, justified, and/or privileged.

<u>Fifth Affirmative Defense  (Failure to Mitigate)</u>

Upon information and belief, Plaintiffs failed to mitigate or attempt to mitigate damages, if in fact any damages have been or will be sustained; therefore, any recovery by Plaintiffs must be diminished or barred.

<u>Sixth Affirmative Defense  (Waiver, Laches, Estoppel)</u>

Upon information and belief, Plaintiffs are barred from enforcing any patents (including the '177 Patent and/or the '303 Patent), trademarks, trade dress, or copyrights

identified and/or purported to be owned by Plaintiffs as alleged in its Amended Complaint, against Defendants, individually or collectively, under the doctrines of waiver, laches, and/or estoppel.

<u>Seventh Affirmative Defense  (Prosecution History Estoppel)</u>

Upon information and belief, Plaintiffs are barred from enforcing any patents (including the '177 Patent and/or the '303 Patent), trademarks, trade dress, or copyrights identified and/or purported to be owned by Plaintiffs as alleged in its Amended Complaint, against Defendants, individually or collectively, under the doctrine of prosecution history estoppel.

<u>Seventh Affirmative Defense  (Unclean Hands)</u>

Upon information and belief, Plaintiffs are barred from enforcing any patents (including the '177 Patent and/or the '303 Patent), trademarks, trade dress, or copyrights identified and/or purported to be owned by Plaintiffs as alleged in its Amended Complaint, against Defendants, individually or collectively, on the basis of unclean hands.

<u>Eighth Affirmative Defense</u>

Plaintiffs' asserted copyrights pertain to subject matter which is not copyrightable.

<u>Ninth Affirmative Defense</u>

Plaintiffs' asserted copyrights, if enforceable at any time, have entered the public domain.

<u>Tenth Affirmative Defense</u>

Plaintiffs' do not have proper title in any alleged trademarks, trade dress, or copyrights, or in the alternative, do not have standing to bring this action.

### Eleventh Affirmative Defense

Plaintiffs' alleged trademarks and/or are not inherently distinctive, have not acquired secondary meaning, and/or do not operate as a source identifier.

### Twelfth Affirmative Defense

Plaintiffs' asserted copyrights, if enforceable at any time, have entered the public domain.

### Thirteenth Affirmative Defense

Plaintiffs' alleged trademarks and/or trade dress are common descriptive or generic terms.

### Fourteenth Affirmative Defense

Plaintiffs' alleged trade dress is functional.

### Fifteenth Affirmative Defense

Defendants' products do not infringe any of Plaintiffs' alleged copyrights, trademarks, and/or trade dress.

### Sixteenth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of acquiescence.

### Seventeenth Affirmative Defense

Defendants' conduct is non-actionable based on the doctrine of fair use.

### Eighteenth Affirmative Defense

Plaintiffs' claims are barred in whole or in part based on the relevant statute of limitations.

In addition to the Affirmative Defenses described above, Defendants specifically reserve the right to allege additional affirmative defenses as they become known.

## COUNTERCLAIMS

For its Counterclaims against Semantic Compaction Systems, Inc. and Prentke Romich Company (collectively, "Counterclaim Defendants"), Speak for Yourself LLC, Ms. Renee Collender, and Ms. Heidi LoStracco (collectively, "Counterclaim Plaintiffs") state as follows:

## PARTIES

1.      Speak for Yourself LLC ("SFY") is a limited liability company duly existing and organized under the laws of the State of New Jersey with its principal place of business at 37 Heron Pointe Court, Marlton, New Jersey 08053.

2.      Ms. Renee Collender is an individual and member of SFY with a business address of 37 Heron Pointe Court, Marlton, New Jersey 08053.

3.      Ms. Heidi LoStracco is an individual and member of SFY with a business address of 37 Heron Pointe Court, Marlton, New Jersey 08053.

4.      Upon information and belief, Semantic Compaction Systems, Inc. ("SCS") is a corporation incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business at 1000 Killarney Drive, Pittsburgh, Pennsylvania 15234.

5.      Upon information and belief, Prentke Romich Company ("PRC") is a corporation incorporated under the laws of the State of Ohio with its principal place of business at 1022 Heyl Road, Wooster, Ohio 44691.

## JURISDICTION AND VENUE

6.      This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*  This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338, the Declaratory Judgment Act 28 U.S.C. §§ 2201 *et seq.*, and § 1332(a).  Venue is proper in this Court under 28 U.S.C. § 1400(b) and § 1391(b)-(c).

7.   This Court has personal jurisdiction over Counterclaim Defendants because Counterclaim Defendants filed its lawsuit against Counterclaim Plaintiffs in this District.

## FEDERAL DECLARATORY JUDGMENT ACT

8.   Pursuant to the Federal Declaratory Judgment Act, §§ 2201 *et seq.*, this Court may declare the rights and other legal relations of any interested party.

9.   In the Complaint, Counterclaim Defendants have asserted that Counterclaim Plaintiffs infringe U.S. Patent No. 5,748,177 and U.S. Patent No. 5,920,303 (collectively, "the Patents-in-Suit"). Counterclaim Plaintiffs have not, and do not, infringe the Patents-in-Suit. Furthermore, one or more claims of the Patents-in-Suit are invalid under the Patent Act, 35 U.S.C. § 101 *et seq.*, including but not limited to §§ 101, 102, 103, and/or 112.

10.   There exists a real and actual substantial controversy between Counterclaim Plaintiffs and Counterclaim Defendants before this Court where the relief sought by Counterclaim Plaintiffs will resolve the controversy relative to the respective interests of the parties.

11.   Accordingly, Counterclaim Plaintiffs seek Declaratory Judgment from this Court that (i) Counterclaim Plaintiffs have not, and do not, infringe the Patents-in-Suit; (ii) one or more claims of the Patents-in-Suit are invalid; and, (iii) Counterclaim Plaintiffs should be awarded their costs, attorneys' fees, expenses, and such other further relief as may be just and proper.

12.   Counterclaim Plaintiffs and Counterclaim Defendants are direct competitors.

13.   Counterclaim Defendants demonstrated bad faith by asserting the '177 Patent and the '303 Patent (the "Patents in Suit") against Counterclaim Plaintiffs.

14.     Counterclaim Defendants filed its baseless lawsuit in order to directly interfere with Counterclaim Plaintiffs' business relationships.

15.     Counterclaim Defendants' patent infringement claims against Counterclaim Plaintiffs are objectively baseless because the Patents in Suit are obviously invalid and/or plainly not infringed.

16.     The Patents in Suit are invalid as anticipated and/or obvious under the Patent Act, 35 U.S.C. § 101 *et seq.*, including but not limited to §§ 102, 103.

17.     The Patents in Suit are plainly not infringed by the SFY app.  Each claim of the Patents in Suit requires either "a plurality of keys including a displayed *polysemous* symbol defined to correspond thereto" or "a plurality of keys including with *polysemous* symbol defined to correspond thereto."  (*See* Exhibits A and B (emphasis added).)  "Polysemous" is *expressly defined* in both Patents in Suit as "many-meaning."  (*See* Exhibits A and B at column 1, line 42-44 ("On this keyboard, associated with each of a plurality of keys, were polysemous (*many-meaning*) symbols, . . . .") (emphasis added).)

18.     SFY's app does not include polysemous symbols.  This can be readily identified by simply looking at the SFY app.  Indeed, SFY provides an effective tool with faster access to consistent motor planning precisely because it does not use polysemous icons.

19.     The lack of polysemous symbols is readily apparent in the way SFY works.  A child starts at a home screen with 119 symbols that represent core vocabulary categories (color, friend, eat, drink, etc.).  Touching a symbol on the home page will take her to a second page with other symbols.  For example, if she touches "color" on the home page, she will go to the color page and can touch any of the colors on that page.  In two moves (color + green), the child can "say" green; then SFY automatically returns the child to the home page.  SFY relies

on the stable location of symbols and a stable pattern for saying each word so that the child can develop consistent motor plans, much like verbal communicators use muscles the same way when they say the word green or people using sign language make the same motions with their hands every time they say the word green.  The SFY app includes many other differences from the Patents in Suit.

20.     Significantly, Plaintiffs' patents do not describe an iPad application.  In fact, Plaintiffs' programs can only be used on a PRC device.

21.     Counterclaim Defendants have been at all times aware that the SFY app does not include polysemous symbols, as expressly defined in the Patents in Suit, as well as other limitations of the claims, and therefore plainly cannot infringe the Patents in Suit, yet Counterclaim Defendant still asserted the Patents in Suit.

22.     Accordingly, Counterclaim Defendants have no reasonable basis to believe that the SFY app infringes the Counterclaim Defendants' Patent in Suit.

23.     Despite knowing its Patents in Suit are invalid and/or are plainly are not infringed, Counterclaim Defendants demonstrated subjective bad faith by making representations to the marketplace that Defendants are allegedly infringing its Patents in Suit.

24.     On March 19, 2012, Counterclaim Defendants sent a cease and desist letter to sole distributor Apple in order to completely shut down Counterclaim Plaintiffs' business activities – a result Counterclaim Defendants did not seek, and could not justify, through a preliminary injunction or other equitable remedies before this Court.  Document 14, ¶ 17.  Letter to Apple from Counterclaim Defendants dated March 19, 2012.)

25.     Counterclaim Defendants baseless lawsuit was meant to conceal its true aim to interfere directly with Counterclaim Plaintiffs' business relationship with Apple.

26.     Counterclaim Defendants' claims were brought in bad faith with the intention of disrupting and destroying Counterclaim Plaintiffs' business, good will, and reputation in the marketplace, and by directly and purposely interfering with its lawful and existing contractual relations with its distributor.

## FIRST COUNTERCLAIM FOR RELIEF

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '177 PATENT)

27.     Counterclaim Plaintiffs herein allege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 11 of its Counterclaims as if set forth fully herein.

28.     An actual and justiciable case or controversy exists between Counterclaim Plaintiffs and Counterclaim Defendants as to the non-infringement of the '177 Patent.

29.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, Counterclaim Plaintiffs request the declaration of the Court that Counterclaim Plaintiff have not infringed, and do not infringe, any claim of the '177 Patent.

## SECOND COUNTERCLAIM FOR RELIEF

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '303 PATENT)

30.     Counterclaim Plaintiffs herein allege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 11 of its Counterclaims as if set forth fully herein.

31.     An actual and justiciable case or controversy exists between Counterclaim Plaintiffs and Counterclaim Defendants as to the non-infringement of the '303 Patent.

32.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, Counterclaim Plaintiffs request the declaration of the Court that Counterclaim Plaintiff have not infringed, and do not infringe, any claim of the '303 Patent.

<u>THIRD COUNTERCLAIM FOR RELIEF</u>

(DECLARATORY JUDGMENT OF INVALIDITY OF THE '177 PATENT)

33.     Counterclaim Plaintiffs herein allege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 11 of its Counterclaims as if set forth fully herein.

34.     An actual and justiciable case or controversy exists between Counterclaim Plaintiffs and Counterclaim Defendants as to the invalidity of one or more claims of the '177 Patent.

35.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, Counterclaim Plaintiffs request the declaration of the Court that one or more claims of the '177 Patent are invalid under the Patent Act, 35 U.S.C. § 101 *et seq.*, including but not limited to §§ 101, 102, 103, and/or 112.

<u>FOURTH COUNTERCLAIM FOR RELIEF</u>

(DECLARATORY JUDGMENT OF INVALIDITY OF THE '303 PATENT)

36.     Counterclaim Plaintiffs herein allege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 11 of its Counterclaims as if set forth fully herein.

37.     An actual and justiciable case or controversy exists between Counterclaim Plaintiffs and Counterclaim Defendants as to the invalidity of one or more claims of the '303 Patent.

38.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, Counterclaim Plaintiffs request the declaration of the Court that one or more claims of the '303 Patent are invalid under the Patent Act, 35 U.S.C. § 101 *et seq.*, including but not limited to §§ 101, 102, 103, and/or 112.

<u>FIFTH COUNTERCLAIM FOR RELIEF</u>

(INTENTIONAL INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS)

39.     Counterclaim Plaintiffs herein allege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 26 of its Counterclaims as if set forth fully herein.

40.     A lawful and existing contractual relationship existed between Counterclaim Plaintiffs and Apple, Inc. ("Apple").

41.     Counterclaim Defendants knew or should have known about the contractual relationship that existed between Counterclaim Plaintiffs' and Apple.

42.     On or about March 19, 2012, Counterclaim Defendants sent third-party Apple, Inc. ("Apple") a letter in which they demanded "that [Counterclaim Plaintiffs'] application be withdrawn from sales, distribution and downloading."

43.     As a result of said letter, Counterclaim Defendants intentionally and improperly induced and/or caused third party Apple, Inc. ("Apple") to remove Counterclaim Plaintiffs' application from Apple's App Store, and breach an agreement between Counterclaim Plaintiffs and Apple.

44.     Counterclaim Defendants' accusations were made in bad faith and are both objectively and subjectively baseless because (a) the Patents in Suit are obviously invalid and/or plainly not infringed, and (b) despite knowing that their claims have no objective basis,

-19-

Counterclaim Defendants sent a cease and desist letter to Counterclaim Plaintiffs' sole distributor in order to interfere with Counterclaim Plaintiffs' business activities.

45.     Counterclaim Defendants have no reasonable basis to believe that the SFY app infringes the Patent in Suit.  Counterclaim Defendants' baseless lawsuit was filed to conceal Counterclaim Defendants' attempt to intentionally interfere with the business relationships of Counterclaim Plaintiffs.

46.     Counterclaim Plaintiffs have suffered, and will continue to suffer, pecuniary loss from Apple's removal of Counterclaim Plaintiffs' application from Apple's App Store and, ultimately, the complete destruction of its business which is entirely dependent on sales of its iPad App through the App Store.

<u>SIXTH COUNTERCLAIM FOR RELIEF</u>

(INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS)

47.     Counterclaim Plaintiffs herein allege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 26 of its Counterclaims as if set forth fully herein.

48.     Prior to Apple's removal of Counterclaim Plaintiffs' application from the App Store, it was reasonably probable that hundreds of individuals would purchase and use Counterclaim Plaintiffs' application.

49.     By demanding that Apple remove Counterclaim Plaintiffs' application from the App Store, Counterclaim Defendants purposefully and intentionally harmed Counterclaim Plaintiffs by preventing said individuals from purchasing and using Counterclaim Plaintiffs' Application.

50.     Counterclaim Defendants' accusations were made in bad faith and are both objectively and subjectively baseless because (a) the Patents in Suit are obviously invalid and/or plainly not infringed, and (b) despite knowing that their claims have no objective basis, Counterclaim Defendants sent a cease and desist letter to Counterclaim Plaintiffs' sole distributor in order to interfere with Counterclaim Plaintiffs' business activities.

51.     Counterclaim Defendants have no reasonable basis to believe that the SFY app infringes the Patent in Suit.  Counterclaim Defendants' baseless lawsuit was filed to conceal Counterclaim Defendants' attempt to intentionally interfere with the business relationships of Counterclaim Plaintiffs.

52.     Counterclaim Defendants were not privileged or justified in demanding that Apple remove Counterclaim Plaintiffs' application from the App Store.

53.     Counterclaim Plaintiffs have suffered, and will continue to suffer, pecuniary loss from Apple's removal of Counterclaim Plaintiffs' application from Apple's App Store and, ultimately, the complete destruction of its business which is entirely dependent on sales of its iPad App through the App Store.

SEVENTH COUNTERCLAIM FOR RELIEF

(INJUNCTIVE RELIEF)

54.     Counterclaim Plaintiffs herein allege and incorporate by reference its Affirmative Defenses and paragraphs 1 through 26 of its Counterclaims as if set forth fully herein.

55.     Counterclaim Defendants' actions constitute intentional interference with Counterclaim Plaintiffs' existing and prospective contractual relations, and the intentional and improper destruction of Counterclaim Plaintiffs' business.

56.     Counterclaim Defendants' accusations were made in bad faith and are both objectively and subjectively baseless because (a) the Patents in Suit are obviously invalid and/or plainly not infringed, and (b) despite knowing that their claims have no objective basis, Counterclaim Defendants sent a cease and desist letter to Counterclaim Plaintiffs' sole distributor in order interfere with Counterclaim Plaintiffs' business activities.

57.     Counterclaim Defendants have no reasonable basis to believe that the SFY app infringes the Patent in Suit.  Counterclaim Defendants' baseless lawsuit was filed to conceal Counterclaim Defendants' attempt to intentionally interfere with the business relationships of Counterclaim Plaintiffs.

58.     Counterclaim Defendants' actions are ongoing and are causing, and if not enjoined, will continue to cause, substantial and irreparable harm to Counterclaim Plaintiffs in that: Counterclaim Plaintiffs will continue to lose a substantial and indefinite number of customers; Counterclaim Plaintiffs will suffer irreparable harm to their business, reputation and goodwill; and  Counterclaim Plaintiffs will continue to lose the value of its Application.

59.     Counterclaim Plaintiffs have no adequate remedy at law.

60.     The threat and injury to Counterclaim Plaintiffs outweigh whatever damage a preliminary injunction may cause Counterclaim Defendants.

61.     Issuance of a preliminary injunction will restore the status quo as it existed prior the commencement of Counterclaim Defendants' actions.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Counterclaim Plaintiffs pray that is Court grant relief and judgment:

a.     That the Complaint be dismissed in its entirety, with prejudice;

b.      That no injunctive relief shall issue to Counterclaim Defendants;

c.      That Counterclaim Defendants shall take nothing by reason of its Complaint;

d.      As to the First Counterclaim for Relief, that the claims of the '177 Patent be adjudged not infringed (directly or indirectly, literally or under the doctrine of equivalents) by Counterclaim Plaintiffs;

e.      As to the Second Counterclaim for Relief, that the claims of the '303 Patent be adjudged not infringed by Counterclaim Plaintiffs;

f.      As to the Third Counterclaim for Relief, that one or more claims of the '177 Patent be adjudged invalid;

g.      As to the Fourth Counterclaim for Relief, that the one or more claims of the '303 Patent be adjudged invalid;

h.      That Counterclaim Plaintiffs be awarded their costs, attorneys' fees, expenses, and such other further relief as may be just and proper;

i.      That this action be deemed exceptional under 35 U.S.C. § 285, and judgment be entered awarding Counterclaim Plaintiffs their costs and reasonable fees; and,

j.      Such other relief as the Court may deem just and proper.

k.      As to Fifth Counterclaim for Relief, that Counterclaim Plaintiffs be awarded their costs and prejudgment interest on all damages related to Counterclaim Defendants' intentional interference with existing contractual relations.

l.      As to Sixth Counterclaim for Relief, that Counterclaim Plaintiffs be awarded injunctive relief plus their costs and prejudgment interest on any damages that may

be determinable related to Counterclaim Defendants' intentional interference with prospective contractual relations.

m.     As to Seventh Counterclaim for Relief, that Counterclaim Defendants be enjoined form directly or indirectly contacting Apple, iTunes®, the App Store, or any similar entity, and demanding that the SFY App be removed from iTunes® and/or App Store, and that the Court enter an order requiring Defendants to rescind their demand to Apple that Apple remove the SFY App from iTunes® and/or the App Store.

<u>JURY TRIAL DEMAND</u>

In accordance with Federal Rule of Civil Procedure 38, Defendants/Counterclaim Plaintiffs demand a trial by jury on all issues and claims so triable.

DATED:  July 9, 2012                              Respectfully submitted,

                                                            */s/ John C. Hansberry*
                                                            John C. Hansberry (PA 74721)

                                                            PEPPER HAMILTON, LLP
                                                            50th Floor, 500 Grant Street
                                                            Pittsburgh, PA 15219-2507
                                                            Phone: (412) 454-5000
                                                            Fax:  (412) 281-0717
                                                            Email:  hansberj@pepperlaw.com

                                                            *Attorneys for Defendants/*
                                                            *Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Answer and Counterclaims to Plaintiffs' Amended Complaint was served July 9, 2012, upon counsel of record via the Court's ECF system.

/s/ *John C. Hansberry*
John C. Hansberry