IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEMANTIC COMPACTION SYSTEMS, INC.; and PRENTKE ROMICH COMPANY, an Ohio Corporation, | CIVIL ACTION NO. 2:12-cv-248-GLL<br><br>Judge Gary L. Lancaster |
| Plaintiffs, | |
| v. | |
| SPEAK FOR YOURSELF LLC; RENEE COLLENDER, an individual; and, HEIDI LOSTRACCO, an individual, | |
| Defendants. | |

BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER/INJUNCTIVE RELIEF TO PREVENT DESTRUCTION OF BUSINESS

Prentke Romich and Semantic Compaction Systems filed their Complaint in February 2012 but did not seek injunctive relief from the Court. Instead, Plaintiffs directly threatened Apple, Inc. with this Lawsuit and demanded that Apple withdraw the SFY App from Apple's App Store. Apple ultimately withdrew the SFY App from the App Store solely in response to Plaintiffs' threats. As a result, Plaintiffs effectively blocked all access to the SFY App and intentionally and irreparably destroyed the ongoing Speak for Yourself business, reputation, and goodwill. Courts in this Circuit have consistently held that a destruction of business, or a loss of reputation, goodwill, and/ or economic loss severe enough to destroy a business can constitute irreparable harm sufficient to allow for the grant of a preliminary injunction.

I.      Irreparable Harm:  Plaintiffs' Destruction of the SFY Business

SFY develop, marketed, and provided training regarding one product: an iPad app that helps people with disabilities communicate.  Declaration of Heidi LoStracco (Document 14-1) at ¶¶ 5-8.  The App is an Augmentative and Alternative Communication System ("AAC"), which was developed by Collender and LoStracco, and designed as both a teaching tool and therapeutic device for individuals with autism, cerebral palsy and other communicative disorders.  (*Id.* ¶¶ 12-14).  The App's code is only compatible with Apple's IOS operating system, and thus, it can only be sold/ purchased as an iPad app through Apple's App Store.  (*Id.* ¶ 7).  When it is available in the App Store, the App fills a critical void; offering a cost-effective, easily updatable AAC to individuals who might otherwise be unable to afford or access such a device.  (*Id.* ¶ 6, *see also* Document 14-3, p. 9).  Indeed, to the hundreds of therapists, school districts, hospitals and families who purchased the App, it is a critical device, and one that gives their clients, students, and children a voice.

As the Court is aware, the SFY App is no longer available for purchase anywhere because Plaintiffs contacted Apple directly and demanded, in a March 19, 2012 letter from its attorneys, "that the [SFY] application be withdrawn from sales, distribution and downloading." Plaintiffs' intentional destruction of Defendants' business is detailed further in Defendants' Answer to Amended Complaint and Counterclaim, which is incorporated herein by reference. After months of silence, during which time Apple gave no indication that SFY's explanation was unsatisfactory, Apple removed the App from its App Store on June 4, 2012  SFY has no means to sell, market or update its iPad App.  Defendants cannot provide training, education, or perform any other business activity associated with its iPad App.

II.     Argument

As directed by the Court, Defendants now submit its position that Plaintiffs' destruction of Defendants' business constitutes irreparable harm.

Federal district courts "utilize a federal standard in examining requests to federal courts for preliminary injunctions." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989). A showing of irreparable harm is the second of four requirements that must be met in order for the court to grant a preliminary injunction. *See Feldman & Pinto, P.C. v. Seithel*, No. 11-5400, 2011 U.S. Dist. LEXIS 147655, at *20 (E.D. Pa. Dec. 22, 2011). To successfully demonstrate that he or she will suffer "irreparable harm," the movant "must show that the failure of the court to issue an injunction will result in imminent injury such that legal or equitable relief at the end of the trial will not remedy the harm." *Id*. at *41-42 (noting that "[t]he word 'irreparable connotes that which cannot be repaired, retrieved, put down again [or] atoned for" (quotations and citations omitted)). As explained below, Plaintiffs have caused an injury so severe that it cannot be repaired, and thus, Defendants are entitled to mandatory injunctive relief.

Courts in the Third Circuit have often found that the "substantial loss of business and the threat of bankruptcy can be sufficient for a finding of irreparable harm." *Newlife Homecare, Inc. v. Express Scripts, Inc.*, No. 3:07cv761, 2007 U.S. Dist. LEXIS 33031, at *11 (M.D. Pa. May 4, 2007); *Warden v. Falk*, No. 11-2796, 2011 U.S. Dist. LEXIS 82956, at *24 (E.D. Pa. July 27, 2011) (finding that Warden demonstrated the possibility of irreparable harm because he "risk[ed] the dilution or destruction of the strength of the goodwill associated with his name"); *Lindsay v. City of Phila.*, 844 F. Supp. 229, 236-37 (E.D. Pa. 1994) ("While economic damages alone are generally not enough to constitute irreparable harm, there is an exception in the instance where the economic loss may be severe enough to destroy a business"). In fact, a significant loss in business may suffice in certain situations. *See e.g., Pappan Enters., Inc. v.*

*Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1999) (noting that "[g]rounds for irreparable injury include loss of reputation, loss of trade, and loss of goodwill").

For example, in *Grosso Enters. v. Domino's Pizza, LLC*, the court found that, because the plaintiff "operated a Domino's franchise for over fourteen years, [and] expended $30,000 to $50,000 on required purchases and other improvements to the store," the loss of the franchise, which was "an ongoing business representing many years of effort and [the plaintiff's personal] livelihood," could not "be fully compensated by subsequent monetary damages." No. 11-1484, 2011 U.S. Dist. LEXIS 23708, at *15-16 (E.D. Pa. Mar. 9, 2011). Similarly, in *Minard Run Oil Co. v. U.S. Forest Serv.*, the court found that the potential for irreparable harm did exist because "the economic loss" from the government's drilling regulations would be so great as to threaten destruction of the moving party's business. No. 09-125, 2009 U.S. Dist. LEXIS 116520, at *88-89 (W.D. Pa. Dec. 15, 2009); *see also Sarwari v. BP Prods. N. Am., Inc.*, No. 06-2976, 2006 U.S. Dist. LEXIS 65987, at *18-19 (D.N.J. Sept. 15, 2006) (finding similarly).[1]

Here, Plaintiffs' intentional conduct is directed at the complete destruction of business, reputation, and goodwill of SFY. Because SFY cannot sell its iPad App there has been a total shutdown of the SFY business since June 4, 2012. This is not a situation where the company stands to lose a portion of its market-share, a few customers, or a critical business opportunity. *Cf Instant Air Freight Co. v. CF Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) (overturning the district court's finding of irreparable harm, because its "determination

---

[1] Of course, "the loss of customers or business built upon the sale and use of infringing products does not amount, in the context of a patent infringement suit, to irreparable harm from which [the defendant] should be shielded." *E.I. DuPont de Nemours & Co v. Phillips Petroleum Co.*, 659 F. Supp. 92, 94-95 (D. Del. 1987). But that is not what is occurring here. The instant situation differs from the rule in *E.I. DuPont* in two important respects: 1) SFY is attempting to enjoin an extra-judicial remedy; and 2) there has, as yet, been no finding that SFY's app infringes upon anything.

that Instant will be forced to shut down [was] not supported by any financial statements or projections … [and Instant] still maintain[ed] twenty percent of its business … [and was] free to secure other business"); *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 764 (W.D. Pa. 2007) (finding that "the irreparable harm balance does not weigh in defendant's favor" because "its harm in the absence of an injunction is lost business"). SFY is effectively out of business now because it cannot sell its App through Apple's App Store. Defendants are losing more than just their financial investment in the company. Plaintiffs have intentionally destroyed Defendants' good name, their status as inventors responsible for the creation of a valuable tool, and their ability to daily and significantly impact the lives of disabled individuals. These are exactly the type of "peculiar" injuries that cannot be repaired or atoned for, and for which injunctive relief is appropriate and necessary. *See Figueroa*, 423 F. App'x at 210 ("such loss must not be merely economic, but 'of a peculiar nature, so that compensation in money cannot atone for it'" (quoting *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1976)); *see also Instant Air Freight*, 882 F.2d at 801-02 ("In determining whether a remedy in damages for a breach of contract would be adequate the following circumstances are significant: '(a) the difficulty of proving damages with reasonable certainty; (b) the difficulty of procuring a suitable substitute performance by means of money awarded as damages, and (c) the likelihood that an award of damages could not be collected'" (quoting Restatement (Second) of Contracts § 360 (1981))).

III.    Conclusion

Defendants' iPad App cannot be restored unless Plaintiffs are ordered to rescind their demand that Apple withdraw the SFY App, and a monetary award cannot compensate Defendants for the time, energy and effort expended in creating SFY, or the other intangible benefits they receive from running the company. Defendants recognize that Apple is not a party

5

to this lawsuit; but Defendants do not seek a global solution from this Court.  Rather, Defendants simply ask the Court to adjudicate the issue between the Parties that are here, and ask specifically for an Order directing Plaintiffs to remove the impediment tortiously created by Plaintiff so as to prevent the total destruction of Defendants' business and livelihood, and prevent Plaintiffs from gaining an improper benefit based on their deliberate and intentional destructive conduct.

Dated:  July 9, 2012                                                    Respectfully submitted,


                                                                        */s/John C. Hansberry*
                                                                        John C. Hansberry (Pa. I.D. No. 74721)

                                                                        PEPPER HAMILTON LLP
                                                                        One Mellon Bank Center
                                                                        50th Floor
                                                                        500 Grant Street
                                                                        Pittsburgh, PA 15219-2502
                                                                        (412) 454-5000
                                                                        Email:  hansberj@pepperlaw.com

                                                                        *Attorneys for Defendants*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Defendants' Brief in Support of Motion for Temporary Restraining Order/Injunctive Relief to Prevent Destruction of Business was served July 9, 2012, upon counsel of record via the Court's ECF system.

/s/ John C. Hansberry